IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

BUILDING GRAPHICS, INC.,

        Plaintiff,

v.                                          CIVIL ACTION NO.   3:22-0098

RANDIE and DEANNA LAWSON,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Randie and Deanna Lawson's Motion to Dismiss. ECF No. 4. For the reasons herein, the Court **GRANTS** the Motion, and **DISMISSES** the case.

**I. FACTUAL BACKGROUND**

On March 25, 2010, Randie and Deanna Lawson ("the Lawsons") hired Building Graphics, Inc. ("Building Graphics") to design a home in Milton, West Virginia. Compl. at ¶¶ 5-6, ECF No. 1. The contract contains an indemnification clause where the Lawsons agreed to "defend, indemnify and hold harmless the Designer [Building Graphics, Inc.] from any claim or suit whatsoever, including but not limited to all payments, expense or costs involved, arising from or alleged to have arisen from the contractor's performance or the failure of the contractor's work to conform to the design intent and the contract documents." ECF No. 1-1 at ¶ 2.10. However, the contract specified that Building Graphics would remain responsible for its (or its employees) own negligent acts, errors, or omissions. *Id*. The Lawsons then contracted with G&G Builders, Inc. ("G&G") to serve as the general contractor for the building project. Compl. ¶ 8. In turn, G&G hired numerous subcontractors to complete various aspects of the building work. *Id*. ¶ 9.

In 2014, G&G filed a claim against the Lawsons in the Circuit Court of Cabell County, West Virginia, seeking to recover the balance allegedly due for its work. *Id*. ¶¶ 12-13. The Lawsons filed a counterclaim against G&G alleging various construction defects on the part of G&G and its subcontractors. *Id*. ¶¶ 14, 16. Specifically, the Lawsons allege widespread construction defects and various "nonconformities" from failure to conform the residence to design documents provided by Building Graphics. *Id*. ¶¶ 15-18.

In August 2019, G&G filed a third-party complaint against Building Graphics, adding them to the state court litigation. *Id*. ¶ 19. Subsequently, the Lawsons filed a crossclaim against Building Graphics. *Id*. Evidence in the state court litigation shows support for the Lawsons' allegations of construction nonconformities. *Id*. ¶¶ 20-24. On January 20, 2022, Building Graphics wrote to the Lawsons, requesting that they indemnify Building Graphics in the state court litigation, pursuant to the contract. *Id*. ¶ 26. The Lawsons did not respond. *Id*. ¶ 27. Since its inception, the state court litigation has continued and become a complex lawsuit with multiple parties. On February 24, 2022, Building Graphics filed this action, seeking a declaration that the Lawsons are obligated to indemnify and hold harmless Building Graphics and to provide for Building Graphics' defense, including payment of costs and attorney's fees, in the state court litigation. ECF No. 1. Defendants then moved to dismiss the instant case, arguing that identical issues have been raised in the state court action and the entirety of the case should be resolved in state court.

## II. LEGAL STANDARD

It is within the discretion of the district court to determine whether it will decide a declaratory judgment action over which it has jurisdiction. *Motorists Mut. Ins. Co. v. Frazier,* 623 F. Supp. 2d 727, 731 (S.D.W. Va. 2009) (citing *Wilton v. Seven Falls Co.,* 515 U.S. 277, 288

(1995)). "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton,* 515 U.S. at 288 (1995). As the Fourth Circuit explained in *Aetna Cas. & Sur. Co. v. Quarles,* 92 F.2d 321 (4th Cir. 1937), a district court should decide a declaratory judgment action if a judgment will (1) "serve a useful purpose in clarifying and settling the legal relations in issue" and (2) "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Quarles,* 92 F.2d at 324. The courts should, however, avoid trying "particular issues without settling the entire controversy" and "interfer[ing] with an action which has already been instituted." *Id.*

In deciding whether to hear a declaratory judgment action, the Fourth Circuit has set out four factors that district courts should consider: (1) the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts; (2) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; (3) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems because of overlapping issues of fact or law; and (4) whether the declaratory judgment action is being used merely as a device for procedural fencing. *Motorists Mut.,* 623 F. Supp. 2d at 731 (citing *Nautilus Ins. Co. v. Winchester Homes, Inc.,* 15 F.3d 371, 377 (4th Cir. 1994)).

### III. ANALYSIS

A. Applying *Quarles*

As noted above, the Fourth Circuit expressed a preference not "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted." *First Financial Ins. Co. v. Crossroads Lounge, Inc.,* 140

F. Supp. 2d 686, 690-91 (S.D.W. Va. 2001) (quoting *Quarles,* 92 F.2d at 325). If a judgment will (1) serve a useful purpose in clarifying and settling the legal relations in issue and will (2) terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding, district courts should normally entertain the declaratory judgment action. *Id.* at 692 (citing *Quarles,* 92 F.2d at 325).

This Court has adopted "a flexible, case-by-case, and party-oriented definition of controversy—a definition which might not necessarily sweep in every question that arises from the common nucleus of operative facts present in any related state cases." *Id.* When the questions presented in the declaratory judgment circumscribe the entire controversy between the declaratory plaintiff and defendants, retention of the federal action will normally occur. *Id.*

Here, a judgment in this case would not likely "serve a useful purpose" in settling the issue of whether the Lawsons must indemnify Building Graphics with respect to G&G's claims. This is because this case is not analogous to other declaratory judgment actions raising questions of insurance coverage. Unlike the broad duty to defend that exists under most insurance contracts, the clause in this contract limits the duty to defend and to indemnify to litigation based on the failure of the general contractor to conform to the plans. It does not cover Building Graphics' (or its employees') own negligence. Thus, the scope of the duty to indemnify requires finding of facts as to the cause of the damages. Insofar as the state case alleges failure to conform with plans as the cause of the nonconformity, a declaratory judgment would be useful. However, because the state action alleges multiple theories of Building Graphics' liability and raises the same indemnity issues, the utility of this declaratory judgment is lessened. *See e.g.*, ECF Nos. 8-1, 8-2, 8-3.

Similarly, then, the declaratory judgment would likely not resolve "controversy giving rise to the proceeding." As this Court explained in *First Financial Ins. Co. v. Crossroads Lounge, Inc.,* 140 F. Supp. 2d 686 (S.D.W. Va. 2001):

> If "controversy" means simply the insurance coverage questions, as framed by the declaratory judgment complaint, then settling those issues in federal, rather than state, court will not result in a piecemeal determination of "the controversy." If, however, "controversy" is read to encompass not only the defense and coverage issues, but also the underlying tort claim, or, more generally, all of the issues that arise from the common nucleus of operative facts, then this case in its current form cannot settle "the entire controversy…."

140 F. Supp. 2d at 691–92. Here, as discussed above, even with a declaratory judgment, the underlying tort and contract claims would continue to exist, as would questions over how to apportion responsibility. Litigation would likely continue in the state court on these issues of fault which require specific findings of fact. The *Quarles* test thus weighs in favor of abstention to avoid piecemeal litigation.

B. Applying *Nautilus*

In *Nautilus,* the Fourth Circuit presented four factors courts should consider when faced with the decision between retaining jurisdiction over a federal declaratory judgement action or abstaining in favor of letting a state court adjudicate the claim.

1. *State Interest*

Defendants contend that the state has "every interest" in trying the state court action and deciding the rights of parties pursuant to the contracts between them. *See* Defs.' Mem. in Supp. at 4, ECF No. 6. Plaintiff contends that the state of West Virginia has no interest in this declaratory judgment. Pl.'s Resp. at 4-5, ECF No. 7. While West Virginia undoubtedly possesses an interest in seeing that citizens' contractual rights are enforced, the state interest is not particularly strong here. Even in actions involving only issues of state law, the state's interests are less when the state law

issues are not "difficult" or "unsettled." *Nautilus,* 15 F.3d at 378; *see also First Financial,* 140 F.Supp.2d at 695. Additionally, "[l]ike all contracts, insurance policies generally hinge on state contract law. Indeed, were this the only consideration, most, if not all, declaratory judgment actions regarding insurance coverage disputes would be dismissed from federal court. Such a *per se* bar would run contrary to Fourth Circuit precedent and practice." *USF Ins. Co. v. Stowers Trucking, LLC*, 684 F. Supp.2d 786, 791 (S.D.W. Va. 2010) (citing *Nautilus,* 15 F.3d at 375–76)). Here, of course, as well, the contract between Plaintiff and Defendants is governed by North Carolina law by its very terms, not West Virginia law. *See* Ex. A at ¶ 7.8, ECF No. 1-1. Thus, this factor does not weigh heavily in favor of abstention.

    2. *Efficiency*

The second *Nautilus* factor involves inquiry into "whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending." *Nautilus*, 15 F.3d at 377; *see Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 495 (1942). This inquiry reviews "whether the claims of all parties in interest [to the federal proceeding] can satisfactorily be adjudicated in [the state] proceeding, whether necessary parties have been joined, [and] whether such parties are amenable to process in [the state] proceeding." *Brillhart*, 316 U.S. at 495; *Nautilus*, 15 F.3d at 378–79; *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 212 (4th Cir. 2006). In general, efficiency and judicial economy are best promoted by "having all litigation stemming from a single controversy resolved in a single court system." *Mitcheson v. Harris,* 955 F.2d 235, 239 (4th Cir. 1992). As this Court explained in *Motorists Mutual,* where all parties and controversies at issue in the federal case are also present in the state case, the efficiency factor "tilts in the favor of dismissing the action" and resolving all issues in the state court system. 623 F. Supp. 2d at 733.

The plaintiff and defendants in the instant case are both parties in the state court proceeding. ECF Nos. 6-1, 8-1, 8-2, 8-3. The state action involves related contract and tort claims not present here, which "suggests that it, unlike this action, could resolve all of the rights of all interested parties with respect to the controversy giving rise to both actions." *Nationwide Mut. Fire Ins. Co. v. Carter*, 2017 WL 2531579, at *5 (June 9, 2017). "While inefficiencies can of course occur within a single court system, the prospects for coordinated management and alleviation of abrasion are greater when the litigation is handled under one jurisdictional roof." *Mitcheson*, 955 F.2d at 239. Given that the state court has already had two and a half years to grapple with these issues, it can more efficiently adjudicate the claims. Accordingly, this factor weighs heavily in favor of dismissal so that all issues may be resolved in one court system.

### 3. Entanglement

The third *Nautilus* factor asks whether issuing a judgment in the federal case would unnecessarily entangle state and federal court systems due to overlapping issues of law or fact. *See Nautilus,* 15 F.3d at 377. The Court in *Mitcheson* explained:

> In many declaratory actions brought to resolve a duty to defend or indemnify an insured in a controversy already the subject of state court litigation, there will be overlapping issues of fact or law between the state and federal actions.... The insured may well be collaterally estopped from relitigating the overlapping issues decided in the federal action. Such issue preclusion will likely "frustrate the orderly progress" of state court proceedings by leaving the state court with some parts of a case foreclosed from further examination but still other parts in need of full scale resolution.

955 F.2d at 239 (quoting *Phoenix Ins. Co. v. Harby Marina, Inc.,* 294 F. Supp. 663, 664 (N.D.Fla.1969)) (internal citations omitted). Because the state court has the same or substantially similar indemnity and defense claims pending, claim preclusion or issue preclusion could arise if this Court adjudicated the claims. If this Court were to issue a judgment first, the defendants would likely be precluded from relitigating the issue in state court, which could complicate the state

proceeding. A state court then consulting federal law to determine the preclusive principles at work creates further entanglement. *See id*. at 240. Thus, this factor weighs heavily in favor of abstention and dismissal of the case.

### 4. Procedural Fencing

Finally, the Court must determine whether the federal action is being used as a device for "procedural fencing" or forum-shopping. *See Nautilus,* 15 F.3d at 377. In *Motorists Mutual,* this Court noted that the plaintiff in the federal case had waited over a month between denying coverage to the defendants and instituting its declaratory judgment action. Furthermore, the initial state court claims could not have been brought in federal court. The Court thus found that the plaintiffs may have engaged in forum shopping. Here, the action instituted by G&G began in 2014. Specifically, Building Graphics was brought in as a party in August 2019. However, it waited two and a half years to institute this declaratory judgment against Defendants, despite ongoing state litigation and lengthy discovery encompassing the indemnification claims. Thus, this factor also weighs against exercising jurisdiction.

## IV.   CONCLUSION

On balance, consideration of the factors set out in *Quarles* and *Nautilus* weighs in favor of abstention in this action. The goals of efficiency, judicial economy, and comity will be best served by keeping the entire controversy in one court system. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss (ECF No. 6) and **ORDERS** that the case be dismissed.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:   June 24, 2022

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE